IN THE CHANCERY COURT OF TENNESSEE FOR THE
THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | | |
|---|---|---|
| AMERICAN HOME SHIELD CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| DAVID SPECTER, | ) ) ) | |
| Defendant. | ) ) | |

> SHELBY COUNTY
> CHANCERY COURT
> MAR 1 5 2019
> DONNA L. RUSSELL, C & M
> TIME: _____ BY: _____

---

## VERIFIED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, TEMPORARY AND PERMANENT INJUNCTION, AND MONETARY RELIEF

---

COMES NOW, Plaintiff American Home Shield Corporation ("AHS"), by and through counsel, files this Verified Complaint for Declaratory Relief, Temporary Restraining Order, Temporary and Permanent Injunction, and Monetary Relief against Defendant David Specter ("Specter") to enforce certain restrictive covenants against Specter and states as follows:

### PARTIES

1.    AHS is a Delaware corporation authorized to do business in numerous states throughout the United States and maintains its national headquarters and principal place of business at 150 Peabody Place, Memphis, Tennessee 38103. AHS is engaged in the business of marketing home warranty contracts, which provide for the repair or replacement of residential home heating, cooling, plumbing, electrical and water heating systems and appliances pursuant to application submitted by or on behalf of buyers and/or sellers of residential properties and providing services pursuant thereto.

2.       Defendant Specter is an adult resident of the State of Missouri, last known to reside at 415 W. Essex, Kirkwood, Missouri 63122.

3.       Specter was employed by AHS as an Account Executive based out of St. Louis, Missouri.  As an Account Executive, Specter was responsible for developing long-term client relationships with real estate agents and brokers, real estate companies, homebuilders, title agencies, lenders, home inspection companies, and other real estate industry professionals. Specter was also tasked with facilitating sales of home warranty agreements that provide a customer with financial protection for repair or replacement of important home system components and appliances that break down over time.

4.       On or about February 4, 2019, Specter informed AHS that he was resigning from his employment.  On February 5, 2019, AHS reminded Specter of his non-competition and non-solicitation requirements.

5.       Upon information and belief, Specter has accepted a position with Choice Home Warranty, ("Choice"), another seller of home warranties and a direct competitor of AHS.  Upon information and belief, at Choice, Specter will be performing the same or similar services as he performed on behalf of AHS in the same territory where he worked for AHS and has solicited AHS clients in violation of his Employment Agreement.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over the subject matter of this cause of action pursuant to Tenn. Code Ann. § 16-11-101, *et seq.*

7.       This Court has personal jurisdiction and venue is proper in this court pursuant to Defendant's Employee Confidentiality/Non-Compete Agreement (*See* Exhibit A, Confidentiality/Non-Compete Agreement, ¶ 10) ("Confidentiality/Non- Compete Agreement").

2

Pursuant to the Confidentiality/Non-Compete Agreement, "both parties will have substantial contacts with the State of Tennessee in the performance of this Agreement." (Id.)  Further, the Confidentiality/Non-Compete Agreement that Defendant executed provides that AHS and Defendant "agree[d] that any lawsuits, legal actions or proceedings seeking to interpret or enforce the covenants contained in this Agreement shall be brought in the appropriate federal or state court located in. Shelby County, Tennessee, and each party shall submit to and accept the exclusive jurisdiction of such court for the purposes of such suit, legal action or proceeding."  (Id.)

## INTRODUCTION

8.      AHS is engaged in the highly competitive business of marketing home warranty contracts, which provide for repair or replacement of residential home heating, cooling, plumbing, electrical, and water heating systems and appliances. AHS provides services pursuant to these products.

9.      AHS filed the instant action to, among other things, protect its contractual rights and proprietary interests pursuant to the above-referenced Confidentiality/Non-Compete Agreement executed by Defendant.

10.     AHS entered into a Confidentiality/Non-Compete Agreement with Defendant on October 24, 2013. Pursuant to the Confidentiality/Non-Compete Agreement, Defendant agreed that for one year following termination of employment with AHS, he would not (1) compete with AHS or (2) solicit or sell any service or product that competes with AHS to any AHS client or from whom Defendant solicited business during the prior twelve months of his employment.  Defendant also agreed not to disclose confidential information of AHS following termination of employment with AHS.

3

11.   As discussed more fully below, Defendant is now in breach of the Confidentiality/Non-Compete Agreement.

12.   On or around October 24, 2013, Defendant began his employment with AHS as an Account Executive covering a territory in and around St. Louis, Missouri. In his position as an Account Executive, Defendant was responsible for, among other things, facilitating the sale of AHS home warranty products by negotiating favorable business agreements with real estate agents and other clients within his assigned territory. An important part of Defendant's job responsibilities also include fostering and maintaining positive working relationships with real estate agents and other clients. (*See* Exhibit B, Account Executive Job Description.)

13.   At the time Defendant commenced his employment with AGS, Defendant entered into and signed a Confidentiality/Non-Compete Agreement.

14.   Defendant's Confidentiality/Non-Compete Agreement provides in part as follows:

**5.  <u>Non-Competition/Non-Solicitation/Non-Interference.</u>** Because of and in consideration of AHS' provision of its Confidential information to Employee and/or allowing Employee access to its clients, in acknowledgement of the highly competitive and sensitive nature of the businesses and services, and in order to protect such Confidential Information and the goodwill and client relationships with which Employee has been entrusted with by AHS, Employee agrees as follows:

(a)   <u>Non-competition</u>

(i)   Employee agrees to immediately inform Employee's manager in the event that Employee is solicited to pursue employment with a competitor or otherwise has communication with any third party regarding potential employment with a competitor.

(ii)   For one (1) year following the termination of Employee's employment with AHS, Employee will not within any county in which Employee performed duties during the last twelve (12) months of employment, directly or indirectly, become employed by or rendered services for any company which provides any service or product that competes with the products or services provided by AHS, nor directly or

indirectly (other than as a minority shareholder or other equity interest of not more than 2% of a company whose equity interests are publicly traded on a nationally recognized stock exchange or over-the-counter market) become interested in (as an individual, partners, stockholder, director, officer, principal, agent, trustee, lender of money or in any other capacity) such a company.

(b)  Non-solicitation of Clients. During Employee's employment by AHS and for one (1) year thereafter Employee will not, directly or indirectly, on behalf of himself/herself or for others, market, solicit or sell any service or product that competes with AHS to any AHS client to whom Employee provided service, sold product, or from whom Employee solicited business, during the last twelve (12) months of Employee's employment with AHS.

(c)  Non-solicitation of Employees/Contractors. During Employee's employment with AHS and for one (1) year thereafter, Employee shall not, directly or indirectly, induce or encourage any AHS employee or contractor to terminate his/her employment or engagement with AHS or to seek employment or association with any person or entity in competition with AHS.

(*See* Exhibit A, Confidentiality/Non-Compete Agreement, ¶ 5.)

15.     The Confidentiality/Non-Compete Agreement that Defendant executed sets forth

that "Employee, while in AHS' employ or thereafter, will not, without the express written consent

of AHS' President, Chief Operating Officer or Legal counsel, directly or indirectly communicate

or divulge, or use for Employee's own benefit or for the benefit of any other person or entity, any

Confidential Information which Employee acquired during the course of Employee's employment

with AHS." (Id., ¶ 4(a).)

16.     The Confidentiality/Non-Compete Agreement that Defendant executed provides that

in addition to any other remedies available at law, AHS "may obtain specific performance and/or

injunctive relief against Employee to prevent such continued or threatened breach. Any duration or

time limitation for Employee's performance under this Agreement shall be tolled or extended while

Employee is in breach, so that AHS receives the full benefit of Employee's obligations." (Id., ¶ 6.)

5

17.     The Confidentiality/Non-Compete Agreement that Defendant executed provides that "Employee also acknowledges and agrees that Employee shall reimburse AHS for all attorneys' fees and costs incurred by it in enforcing any of its rights or remedies under this Agreement." (Id., ¶ 6.)

18.     AHS compensated Defendant with a base salary of $68,996.69 per year. Defendant was eligible for significant incentive compensation.  His total compensation earned in 2018 was $175,235.12.

19.     AHS trained Defendant and provided him with resources to grow his customers in his assigned territory. Some of this training and support occurred in Memphis, Tennessee.

20.     AHS's customer network allowed Defendant to develop significant relationships with customers that he did not have prior to working at AHS.

21.     Defendant separated his employment with AHS on February 5, 2019.

22.     AHS has become aware that one of its competitors in the home warranty contracts and related products business – Choice – is employing Defendant in the position of Senior Account Executive, which is an equivalent position to that which he held with AHS. (*See* Exhibit C, Specter E-mail to Realty Executives.)

23.     Choice conducts business in direct competition with AHS. Choice's website states that "Home warranties with Choice Home Warranty are available to all home owners.  First time home buyers, sellers, and existing home owners are encouraged to invest in the protection offered by Choice Home Warranty. Even home owners with older homes or aged appliances and systems can benefit from Choice Home Warranty's service contract coverage.  *(See* Exhibit D, Choice Website, *Why Purchase a Home Warranty,* https://www.choicehomewarranty.com/homeowners/why-home-warranty/ (last  visited March 13, 2019.)

6

24.     Defendant was aware that Choice competed with AHS and knew that taking employment with Choice was in direct violation of his Non-Compete Agreement.

25.     Prior to leaving AHS, Defendant was reminded of his obligations regarding the Confidentiality/Non-Compete Agreement. (*See* Exhibit E, p. 2, 2.5.19 Courtney E-mail to Specter.)

26.     Upon information and belief, Defendant has solicited AHS customers since leaving AHS.

27.     Specifically, on February 4, 2019, Defendant posted a message on the social media platform Facebook publicly announcing he had resigned from AHS and taken a position with Choice. (*See* Exhibit F, 2.4.19, 7:29 p.m. Facebook Post.)

28.     Defendant's post stated:

***Important update***left AHS/HSA[1]

I have resigned from AHS/HSA warranty and now work at Choice Home Warranty.

I feel more confident now then ever I can deliver first class service, and can stand behind their product, vendor network, and backend customer service! It's amazing at Choice and what they have to offer the client!

I hope all the real estate agents that are reading this will give me a shot and keep working with me!  You will not be disappointed with Choice and myself I promise you that!!

You all gave me a shot 4-5 years ago, I urge you to give me another…now knowing who I am and what customers service means to me

Thank you all!!!! I hope we can continue working together!!!!

My new contact info:
David Specter
Cell: 314-707-3441
Email: dspecter@chwpro.com

(Id.)

---

[1] HSA stands for Home Security of America, Inc., which is a home warranty brand owned by AHS.

29.      On February 4, 2019, Defendant also posted on Facebook: "Brochures will be emailed via pdf Thursday/Friday to all – if I have worked with you in past couple years (once I get my laptop up), and I will be hitting offices making sure everyone has brochures and business cards!!!! Starting the end of this week moving forward!!!! Thank you all for your support.  It means the world." (*See* Exhibit G, 2.4.19, 8:51 p.m. Facebook Post.)

30.      On February 4, 2019, Defendant also revised his Work History on Facebook to indicate he started working at Choice beginning February 4, 2019.  (*See* Exhibit H, Work History Facebook Post.)

31.      On February 8, 2019, Defendant posted to Facebook: "Waiting on my company computer...pdf of Choice Home Warranty brochures will be going out next week (as soon as I receive computer)! Thank you!  Have a great weekend everyone!" (*See* Exhibit I, 2.8.19, 2:39 p.m. Facebook Post.)

32.      A number of real estate agents Defendant solicited during his employment with AHS responded to Defendant's Facebook posts by making comments, and Defendant responded by directly soliciting the business of these clients, including comments such as "...[private message] me ur email! I will send out brochure when I get my laptop on Wednesday/Thursday!! Less costly policies, lower service fee, amazing coverage, and same day turn around time for diagnosis!!!! Going to rock! Would love to work with u again!!!! Now I have more zip codes and we can work together again!" (*See* Exhibit F, 2.4.19, 7:29 p.m. Facebook Post.)

33.      Upon information and belief, Defendant e-mailed an AHS customer on February 21, 2019 stating, "Hello, I am with Choice Home Warranty and would love a chance to sit down with you and discuss a potential partnership. I want to go over…. what makes our policy THE BEST in the industry, the PERSONAL service I provide, and compensation for you and your

office. I work with Peggy, Kim, and several other agents in your office. They will vouch for the level of commitment and service I provide. All I ask for is a 5-10 minute opportunity to speak with you! Please let me know what day/time would work for you next week or the following! Thanks you. ***I will be there for you and your clients before, during, and after escrow!*** Senior Account Executive- Choice Home Warranty David Specter…" (*See* Exhibit C, Specter E-mail to Realty Executives.)

34.     On February 21, 2019, a picture including Defendant was posted on Facebook indicating Defendant had attended AHS customer RE/MAX's Results Awards program. (*See* Exhibit J, Mendica Facebook post.)

35.     On March 11, 2019, AHS V.P. and Deputy General Counsel e-mailed Defendant, stating: "David, I have heard nothing back from you regarding my email below. It is our understanding that you are working for Choice Home Warranty in violation of your American Home Shield confidentiality/non-competition agreement. You need to immediately cease and desist your behavior in violation of the agreement and inform me by noon central time on Tuesday, March 12, 2019, that you have done so. If you do not comply, we intend to take steps necessary to protect our interests. I look forward to hearing from you." (*See* Exhibit E, p. 2, 3.11.19 Courtney E-mail to Specter.)

36.     Having not received a response from Defendant, on March 14, 2019, AHS e-mailed Defendant again and notified him that due to his non-compliance with the Confidentiality/Non-Compete Agreement, AHS intended to file a lawsuit on March 15, 2019. (*See* Exhibit E, p. 1, 3.14.19 Courtney E-mail to Specter.)

37.     On March 14, 2019, counsel for AHS also attempted to contact Defendant via phone and left a voicemail message indicating AHS would be filing a lawsuit on March 15, 2019.

38.    By Defendant's actions, Defendant has blatantly violated the restrictive covenants set forth in his Confidentiality/Non-Compete Agreement by working for a competitor in the same territory Defendant worked for AHS and by soliciting AHS clients to whom Defendant provided services and from whom Defendant solicited business.

39.    As of the date Plaintiff filed its Verified Complaint, Plaintiff has not received any communication from Defendant.

**COUNT I**
**DECLARATORY RELIEF**

40.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

41.    Defendant executed his respective Confidentiality/Non-Compete Agreement and agreed to the terms of the restrictions contained therein, including the provisions relating to non-competition for a period of one (1) year.

42.    By Defendant's employment with Choice and other conduct and actions alleged above, Defendant is in direct violation of the foregoing restrictions in the Confidentiality/Non-Compete Agreement.

43.    AHS therefore requests a declaratory judgment that the Confidentiality/Non-Compete Agreement is valid and enforceable against Defendant.

**COUNT II**
**EXTRAORDINARY RELIEF — TEMPORARY RESTRAINING ORDER**
**(FIRST REQUEST)**

44.    The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

45.    Based on Defendant's violations of his Confidentiality/Non-Compete Agreement, AHS's contractual rights are being and will continue to be violated.

46.     Absent entry of a temporary restraining order enjoining Defendant from competing with AHS and disclosing confidential and proprietary information to AHS's competitors, including but not limited to Choice, AHS will be immediately and irreparably harmed.

47.     As manifested in the aforementioned factual allegations, AHS is likely to prevail on the merits of this action and the balance of the equities favor issuance of the requested relief.

48.     AHS has sustained and will continue to sustain immediate and irreparable injury as a result of Defendant's actions, which are in violation of, *inter alia,* the Confidentiality/Non-Compete Agreement.

49.     AHS will be immediately and irreparably harmed absent the requested temporary restraining order.

50.     With respect to such conduct by Defendant, AHS has no adequate remedy at law.

51.     Accordingly, AHS requests this Court enter a Temporary Restraining Order:

(a)     Enjoining Defendant from breaching the terms of Defendant's Confidentiality/Non-Compete Agreement entered into with AHS;

(b)     Enjoining Defendant from competing with AHS through his employment, pursuant to the terms of Defendant's Non-Compete Agreement for a period of one (1) year from the separation of his employment, including extending any duration or time limitation for Defendant's performance under the Confidentiality/Non-Compete Agreement for the time that Defendant was in breach of the agreement while working at Choice or any other competitor;

(c)     Enjoining Defendant from directly or indirectly, on behalf of himself or for others, offering home warranty products to, or negotiating any business arrangement relating

to home warranty products with, any real estate agent or other business whom Defendant called up during the last 12 months of his employment at AHS;

(d) Enjoining Defendant from disclosing the confidential and proprietary information of AHS to any of AHS's competitors, including but not limited to Choice;

(e) Enjoining Defendant from utilizing any and all confidential information and other property of AHS which Defendant took with him upon his separation from AHS; and

(f) Directing Defendant to return any and all confidential information and other property that he took from AHS upon termination of his employment with AHS.

**COUNT III**
**EXTRAORDINARY RELIEF — TEMPORARY AND PERMANENT INJUNCTION**
**(FIRST REQUEST)**

52. The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

53. Based on Defendant's violations of his Confidentiality/Non-Compete Agreement, AHS's contractual rights are being and will continue to be violated.

54. Absent entry of a temporary injunction restraining and permanent injunctive relief enjoining Defendant from competing with AHS and disclosing confidential and proprietary information to AHS's competitors, including but not limited to Choice, AHS will be immediately and irreparably harmed.

55. As manifested in the aforementioned factual allegations, AHS is likely to prevail on the merits of this action and the balance of equities favor entry of the requested relief.

56. AHS has sustained and will continue to sustain immediate and irreparable injury as a result of Defendant's actions, which are in violation of the Confidentiality/Non-Compete Agreement.

57. With respect to such conduct by Defendant, AHS has no adequate remedy at law.

58.     Accordingly, AHS requests this Court enter a Temporary and Permanent Injunction:

(a)     Enjoining Defendant from breaching the terms of Defendant's Confidentiality/Non-Compete Agreement entered into with AHS;

(b)     Enjoining Defendant from competing with AHS through his employment, pursuant to the terms of Defendant's Non-Compete Agreement for a period of one (1) year from the separation of his employment, including extending any duration or time limitation for Defendant's performance under the Confidentiality/Non-Compete Agreement for the time that Defendant was in breach of the agreement while working at Choice or any other competitor;

(c)     Enjoining Defendant from directly or indirectly, on behalf of himself or for others, offering home warranty products to, or negotiating any business arrangement relating to home warranty products with, any real estate agent or other business whom Defendant called up during the last 12 months of his employment at AHS;

(d)     Enjoining Defendant from disclosing the confidential and proprietary information of AHS to any of AHS's competitors, including but not limited to Choice;

(e)     Enjoining Defendant from utilizing any and all confidential information and other property of AHS which Defendant took with him upon his separation from AHS; and

(f)     Directing Defendant to return any and all confidential information and other property that he took from AHS upon termination of his employment with AHS.

13

## COUNT IV
## MONETARY RELIEF
### (BREACH OF THE CONFIDENTIALITY/NON-COMPETE AGREEMENT)

59.     The allegations contained in the foregoing paragraphs are incorporated herein by reference as if specifically re-alleged herein.

60.     AHS invested significant and substantial time and resources into training Defendant in the business of AHS.

61.     AHS has invested enormous time, professional expertise and other resources to develop valuable relationships and good will with its clients.

62.     Through his breach of the Confidentiality/Non-Compete Agreement, Defendant has been the direct and proximate cause of damages to AHS.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff AHS respectfully requests that this Court:

1.     Issue proper process requiring Defendant to respond to the Complaint within the time allowed by law;

2.     Grant AHS a declaratory judgment that the Confidentiality/Non-Compete Agreement is valid and enforceable against Defendant;

3.     Grant AHS a Temporary Restraining Order against Defendant, which, among other things enjoins Defendant from: (i) breaching the terms of Defendant's Confidentiality/Non-Compete Agreement entered into with AHS; (ii) competing with AHS through his employment, pursuant to the terms of Defendant's Non-Compete Agreement for a period of one year following the separation of his employment, including extending any duration or time limitation for Defendant's performance under the Confidentiality/Non-Compete Agreement for the time that Defendant was in breach of the agreement while working at Choice or any other competitor; (iii) otherwise providing service to Choice's home warranty business during the extended term of Defendant's Non-Compete

14

Agreement; (iv) offering home warranty products to, or negotiating any business arrangement relating to home warranty products with, any real estate agent or other business whom Defendant called up during the last 12 months of his employment at AHS during the extended term of Defendant's Non-Compete Agreement; (v) disclosing the confidential and proprietary information of AHS to any of AHS's competitors, including but not limited to Choice; (vi) utilizing any and all confidential information and other property of AHS which Defendant took with him upon his separation from AHS; and (vii) directing Defendant to return any and all confidential information and other property which he took from AHS upon termination of his employment with AHS;

4.      Grant AHS temporary and permanent injunctive relief which, among other things enjoins Defendant from: (i) breaching the terms of Defendant's Confidentiality/Non-Compete Agreement entered into with AHS; (ii) competing with AHS through his employment, pursuant to the terms of Defendant's Non-Compete Agreement for a period of one year following the separation of his employment, including extending any duration or time limitation for Defendant's performance under the Confidentiality/Non-Compete Agreement for the time that Defendant was in breach of the agreement while working at Choice or any other competitor; (iii) otherwise providing service to Choice's home warranty business during the extended term of Defendants' Non-Compete Agreement; (iv) offering home warranty products to, or negotiating any business arrangement relating to home warranty products with, any real estate agent or other business whom Defendant called up during the last 12 months of his employment at AHS during the extended term of Defendant's Non-Compete Agreement; (v) disclosing the confidential and proprietary information of AHS to any of AHS's competitors, including but not limited to Choice; (vi) utilizing any and all confidential information and other property of AHS which Defendant took with him upon his separation from AHS; and (vii) directing Defendant to return any and all

confidential information and other property which he took from AHS upon termination of his employment with AHS;

5.    Award AHS its general, consequential, and incidental damages; and

6.    Grant AHS such other, further, or different relief to which Plaintiff may be entitled, including attorneys' fees and costs of this action.

**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF.**

Respectfully submitted,

LOUIS P. BRITT III (TN No. 5613)
RUSSELL W. JACKSON (TN No. 27322)
**FORD & HARRISON, LLP**
1715 Aaron Brenner Dr. Suite 200
Memphis, Tennessee 38120
Telephone:    (901) 291-1500
Telefax:    (901) 291-1501
lbritt@fordharrison.com
rjackson@fordharrison.com

**COUNSEL FOR PLAINTIFF**

16

## VERIFICATION

STATE OF TENNESSEE       )
                                       ) ss
COUNTY OF SHELBY        )

       Thomas E. Courtney, being first duly sworn, makes an oath that he is a V.P. and Deputy

General Counsel of American Home Shield Corporation, the Plaintiff in the foregoing Complaint,

and that he has read the same and knows the content thereof, and that the statements in the

Complaint are true, based upon his own knowledge, information and belief.


_____
NAME


Subscribed and sworn to before me this 15th day of March 2019.


_____
Notary Public


My Commission Expires:

_4-10-2022_____





### EMPLOYEE CONFIDENTIALITY/NON-COMPETE AGREEMENT

(Sales)

THIS AGREEMENT is made as of the _24th_ day of _Oct_, 20 _13_ by and between American Home Shield Corporation, a Delaware corporation, its affiliates, parents, subsidiaries, divisions, branches, successors, and assigns, owned or hereafter acquired, (hereinafter collectively "AHS") and _____ _David Specter_ _____ (hereinafter "Employee").

### WITNESSETH:

AHS is engaged in the highly competitive business of marketing home warranty contracts and related products, which provide for the repair or replacement of residential home heating, cooling, plumbing, electrical and water heating systems and appliances pursuant to application submitted by or on behalf of buyers and/or sellers of residential properties and providing services pursuant thereto.

AHS' products are marketed through third-party clients, such as real estate brokers, real estate agents, and other real estate professionals.

The parties agree that Employee is or is about to be employed by AHS in a capacity which will permit Employee to have access to its clients and confidential information, which AHS has invested substantial time, money and effort in developing and thus has a valuable property interest in protecting. For purposes of this Agreement, the term "Confidential Information" means any non-public information or material belonging to or acquired from AHS, its related business units, its licensers, licensees, or its clients, written, electronic or oral, in whatever form, that (i) constitutes a trade secret as defined by the Uniform Trade Secrets Act; (ii) has commercial value and could cause loss or harm to AHS if used or disclosed without AHS' consent; or (iii) AHS is bound not to disclose based on duties to third-parties. The parties agree that the following items are examples of Confidential Information: marketing and sales techniques, business and marketing plans, product and equipment information, business techniques and know-how, financial data, billing rates, customer retention rates, profit margins, pricing formulas, information about AHS' relationships with clients (including, without limitation, client lists, contractual arrangements, performance, expectations, preferences, processes, profit margins, buying habits, and buying history), information regarding AHS' relationships with contractors (including, without limitation, contractor lists, contractual arrangements, processes, profit margins and performance), and any other non-public  data of any kind, nature or description relating to AHS' business and or operations.

The parties agree that Employee will derive substantial benefits and professional enhancement with AHS from the receipt of such Confidential Information;

Employee recognizes that AHS' need for the following covenants is based on the following: (a) AHS has or will expend substantial time, money and effort in providing specialized training to Employee in the business of AHS; (b) Employee will, in the course of his/her employment, be given access to AHS' Confidential Information; (c) AHS markets its products throughout the United States of America and, through investing enormous time, professional know-how and other resources, has developed valuable relationships and goodwill with its clients; and (d) AHS will suffer irreparable harm if Employee were to voluntarily or involuntarily terminate his/her employment and thereafter directly or indirectly violate any of the following covenants;

In consideration of the foregoing employment by AHS and in consideration of AHS permitting access to AHS' Confidential Information, AHS and Employee further agree as follows:

1. **Prior Agreements.**

(a)     Employee warrants and represents that he/she is not subject to any provision of any prior Employment Agreement that would prevent him/her from entering into this Agreement or performing his/her duties and obligations hereunder. To the extent that Employee has confidential information or materials of any former employer, Employee acknowledges that AHS has directed him/her to not disclose such confidential information or materials to AHS or any of its employees, and that AHS prohibits Employee from using said confidential information or materials in any work performed for AHS. Employee will not bring to AHS, and will not use or disclose any confidential, proprietary information, or trade secrets acquired by Employee prior to employment with AHS.

(b)     The parties agree, to the extent that any provision of this Agreement conflicts with any prior Employment Agreement, however titled, between AHS and Employee, the terms of this Agreement shall prevail. All other provisions contained in any prior Employment Agreement will remain enforceable and will supplement this Agreement.

Rev. July 2, 2013



2.   **Advertising**. Employee authorizes AHS, during his/her employment and for a reasonable time thereafter, to use any name or photograph, relating or referring to Employee, in literature or any other form of communication that is distributed by AHS for advertising or promotional purposes.

3.   **Improvements or Inventions**.

(a)   **Disclosure of Improvements or Inventions**. Employee acknowledges and agrees that he/she will promptly notify AHS of all inventions, improvements, discoveries or methods relating to or useful in connection with any business conducted by AHS, now or in the future, which Employee makes or discovers while employed by AHS.

Employee further agrees to assign to AHS all rights, title and interest in such inventions, improvements, discoveries, methods and any related patents or patent applications which pertain to a business in which AHS is engaged, is reasonably expected to engage in, or which AHS has previously expressed an intention to enter. All right, title and interest in and to all inventions, works of authorship, developments, concepts, discoveries, ideas, trademarks and trade secrets, whether or not patentable or registrable under copyright or similar laws ("Inventions") which Employee may solely or jointly develop, conceive or reduce to practice, during the period of employment, except as provided in paragraph 3(b) below, are the sole property of AHS. Employee further agrees that all such Inventions, including works of authorship are "works for hire" for purposes of the Company's rights under copyright laws. Employee agrees to keep and maintain adequate and current written records of all Inventions made by him or her (solely or jointly with others) during the term of employment with AHS. Employee further agrees to perform, during and after employment with AHS, all acts deemed necessary or desirable to permit and assist AHS, at its own expense, in obtaining and enforcing the full benefits, enjoyment, rights and title, throughout the world, of and to the Inventions hereby assigned to AHS as set forth above.

(b)   **Inventions Not Assigned**. Employee understands and acknowledges that the assignment of inventions under this Agreement does not apply to an invention which Employee may have acquired in connection with an invention, discovery or improvement that was developed entirely on Employee's own time for which no equipment, supplies, facilities or trade secret information of AHS was used and (a) that does not relate directly or indirectly to the business of AHS or to its actual or demonstrably anticipated research or development, or (b) that does not result from any work performed by Employee for AHS.

4.   **Confidentiality/Non-Disclosure**.

(a)   **Non-Disclosure of Confidential Information**. Employee acknowledges that during the course of performing Employee's duties for AHS, Employee will be given access to AHS' Confidential Information, including AHS' trade secrets, and will be entrusted with other important AHS assets, such as customer relationships and customer goodwill.  Accordingly, Employee, while in AHS' employ or thereafter, will not, without the express written consent of AHS' President, Chief Operating Officer or Legal counsel, directly or indirectly communicate or divulge, or use for Employee's own benefit or for the benefit of any other person or entity, any Confidential Information which Employee acquired during the course of Employee's employment with AHS.

(b)   **Return of Information**. Promptly after the termination of Employee's employment with AHS or upon AHS' request at any time (whichever occurs earlier), Employee will deliver to AHS all business related documents including, but not limited to, originals and copies of memoranda, customer lists, materials relating to procedures, samples, records, documents, contracts, formulas, computer programs, product information and any other Confidential Information which Employee has obtained while employed by AHS. Employee shall also return immediately any vehicles, keys, credit cards, laptop computers, computer tablets, mobile phones and other electronic devices, identification cards, uniforms, employment accessories, and the like, which were issued to Employee during Employee's term of employment.

(c)   **Exit Interview**. Prior to the time that employment with the Company ceases for any reason, whether voluntary or involuntary, the Employee agrees to meet with a designated representative of the Company to review the Employee's obligations under this Agreement.

(d)   **Disclosure of Obligations to New Employer**. With respect to any new employment after the Employee's employment with the Company ends for any reason (whether voluntary or involuntary), he/she shall disclose the existence of this Agreement to each such employer. The Company agrees to furnish to Employee another copy of this Agreement upon written request of the Employee.

(e)   **Violation of the Computer Fraud and Abuse Act**. Employee acknowledges that accessing AHS' computers without authorization, or by exceeding authorized access, and removing Confidential Information contained thereon by any means, for the purpose of sharing said information with unauthorized persons or using said information for any unauthorized purpose may be a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, which authorizes both criminal and civil penalties for a violation of the Act.

2

Rev. July 2, 2013



5.    **Non-Competition/Non-Solicitation/Non-Interference**.  Because of and in consideration of AHS' provision of its Confidential Information to Employee and/or allowing Employee access to its clients, in acknowledgment of the highly competitive and sensitive nature of the businesses and services, and in order to protect such Confidential Information and the goodwill and client relationships with which Employee has been entrusted with by AHS, Employee agrees as follows:

(a)    Non-Competition

(i)    Employee agrees to immediately inform Employee's manager in the event that Employee is solicited to pursue employment with a competitor or otherwise has communications with any third party regarding potential employment with a competitor.

(ii)    For one (1) year following the termination of Employee's employment with AHS, Employee will not, within any county in which Employee performed duties during the last twelve (12) months of employment, directly or indirectly, become employed by or render services for any company which provides any service or product that competes with the products or services provided by AHS, nor directly or indirectly (other than as a minority shareholder or other equity interest of not more than 2% of a company whose equity interests are publicly traded on a nationally recognized stock exchange or over-the-counter market) become interested in (as an individual, partner, stockholder, director, officer, principal, agent, trustee, lender of money or in any other capacity) such a company.

(b)    Non-solicitation of Clients.  During Employee's employment by AHS and for one (1) year thereafter, Employee will not, directly or indirectly, on behalf of himself/herself or for others, market, solicit or sell any service or product that competes with AHS to any AHS client to whom Employee provided service, sold product, or from whom Employee solicited business, during the last twelve (12) months of Employee's employment with AHS.

(c)    Non-solicitation of Employees/Contractors.  During Employee's employment with AHS and for one (1) year thereafter, Employee shall not, directly or indirectly, induce or encourage any AHS employee or contractor to terminate his/her employment or engagement with AHS or to seek employment or association with any person or entity in competition with AHS.

6.    **Remedies**.  Employee acknowledges and agrees that the restrictions set forth in this Agreement are reasonable and necessary for the protection of AHS' business and goodwill, including its Confidential Information.  Employee further agrees that if Employee breaches or threatens to breach any of Employee's obligations under this Agreement, AHS will suffer irreparable harm, and monetary damages may be insufficient to remedy such a breach.  Therefore, AHS, in addition to any other remedies available to it under the law, may obtain specific performance and/or injunctive relief against Employee to prevent such continued or threatened breach.  Any duration or time limitation for Employee's performance under this Agreement shall be tolled or extended while Employee is in breach, so that AHS receives the full benefit of Employee's obligations.  Further, Employee acknowledges that AHS' decision not to judicially enforce another employee's obligations under his/her Employee Confidentiality/Non-Compete Agreement shall not be considered an admission or waiver of any right regarding the confidential nature of the proprietary and trade secret information as more fully described herein.  Employee also acknowledges and agrees that Employee shall reimburse AHS for all attorneys' fees and costs incurred by it in enforcing any of its rights or remedies under this Agreement.

7.    **Severability**.  Employee acknowledges and represents that the duration, geographical scope, activity and subject matter of the restrictive covenants set forth herein are fair, reasonable and not excessively broad and are necessary to protect AHS' good will and Confidential and/or Proprietary Information and agrees that AHS is entitled to rely upon such representation.  It is the desire and intent of AHS and the Employee that the provisions of this Agreement shall be enforced to the fullest extent permissible.  The invalidity or unenforceability of any provision of this Agreement shall not affect, impair or render unenforceable any other provision hereof.  It is intended that any provision herein that is subsequently held to be invalid or unenforceable as written be construed as valid and enforceable to the fullest extent possible.  If a court of competent jurisdiction finds that any restrictions in this Agreement are unenforceable by reason of its geographic or business scope or duration, such provision shall be construed as if such scope or duration had been more narrowly drafted so as not to be invalid or unenforceable.

8.    **No Continuing Employment Obligation**.  Nothing in this Agreement shall be construed to place upon Company a continuing obligation to employ Employee.  Employee acknowledges and agrees that his/her employment is at-will and may be terminated by AHS, with or without cause and with or without notice, at any time, or upon Employee's own initiative.

9.    **Modification**.  This Agreement may only be modified in writing by AHS' President, Chief Operating Officer or Legal counsel.  Employee acknowledges that no other manager or representative has any authority to enter into any agreement for employment for any specified period or to make any agreement contrary to the foregoing.

3

Rev. July 2, 2013



**American Home Shield**

10.     **Governing Law.**  As AHS is headquartered in Tennessee and both parties will have substantial contacts with the State of Tennessee in the performance of this Agreement, the parties expressly agree that this Agreement shall be construed, interpreted, and enforced, and its validity and enforceability determined, strictly in accordance with the laws of the State of Tennessee without applying its conflicts of laws principles.

11.     **Exclusive Jurisdiction.**  As AHS is headquartered in Shelby County, Tennessee, AHS and Employee agree that any lawsuits, legal actions or proceedings seeking to interpret or enforce the covenants contained in this Agreement shall be brought in the appropriate federal or state court located in Shelby County, Tennessee, and each party shall submit to and accept the exclusive jurisdiction of such court for the purpose of such suit, legal action or proceeding.  The parties also agree that any arbitration relating to, or arising out of, this Agreement will be conducted exclusively in Shelby County, Tennessee.  Each party irrevocably waives any objection it may have now or any time in the future to this choice of venue.  Employee shall stipulate in any proceeding that this Agreement is to be considered for all purposes to have been executed and delivered within the geographic boundaries of the State of Tennessee.

12.     **Voluntary Agreement.**  Employee acknowledges and agrees that he/she reviewed all aspects of this Agreement, has carefully read and fully understands all the provisions of this Agreement, and voluntarily enters into this Agreement.

IN WITNESS WHEREOF, the undersigned have caused the Agreement to be duly executed as of the date first written above.

AMERICAN HOME SHIELD CORPORATION                    EMPLOYEE:

By:_____                         _____
        (signature)                                          (signature)

_____                            _____
        (print name)                                         (print name)

Its:_____
        (title)

4

Rev. July 2, 2013



Job Profile: 100696D - ACCOUNT EXECUTIVE

03:32 PM
03/14/2019
Page 1 of 2

**Job Description**

## Position Overview

Facilitates sales of home warranties and other products and services in assigned territory to meet production budget. Forecasts sales and determines account targets and leverages internal assets to procure. Assists in sales plan implementations within designated accounts for organic growth. Assists with major account presentations, negotiations, and ongoing partnership requirements.

## Job Responsibilities

- Facilitates sales of home warranties and other products and services in assigned territory to meet production budget
- Forecasts sales of home warranty products and services within assigned territory
- Determines account/new user targets and leverages approved internal assets in account procurement.
- Assists in sales plan implementations within designated accounts for organic growth.
- Assists with major account presentations, negotiations, and ongoing partnership requirements.
- Implements all required initiatives within defined parameters.
- Assists in service issue resolution and needed communication.

## Job Requirements

- Bachelor's degree 3 years of related sales experience required, or an equivalent combination of education and experience
- Knowledge of the real estate and home warranty fields
- Oral and written communication skills, including public speaking
- Computer skills with Microsoft Office applications (Word, Excel, Outlook, PowerPoint)
- Problem solving and decision making
- Organization and time management

## Physical Demands and Working Conditions

The physical demands are representative of those that must be met by an employee to perform the essential function to this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.
Incumbent must be prepared to:

- Move up to 10 pounds occasionally, by lifting, carrying, pushing, pulling, or otherwise repositioning objects.
- Sitting for long periods of time while using office equipment such as computers, phones and etc.
- Fingering and Repetitive motions; such as movement of wrists, hands and fingers while picking, pinching and typing during your normal working environment.
- Express or exchange ideas with others through the use of spoken word, quickly, accurately, and at an easily audible volume, and receive detailed information through oral communication at usual speaking levels without correction, and/or make fine discriminations in the nature of sounds in the environment.
- Must be able to operate a motor vehicle.





Incumbent is required to have:

- Close visual acuity to perform detail oriented activities at distances close to the eyes, as well as visual acuity to perform activities at or within arm's reach with skill, control, and accuracy, such as preparing and analyzing data, viewing computer screen and expansive reading.
- Incumbent will be subject to:
- Inside working conditions: The change of building environment such as with or without air conditioning and heating.

   

## Account Executive
## Bonus Plan Addendum *(cont'd)*
### Applicable Job Codes:  100696D

<u>Treatment when New to Role</u>

If the assigned territory has not yet been set up within the sales operations system for tracking and monitoring of unit sales to allow for bonuses under the bonus plan, a newly hired Account Executive (AE) will be eligible to receive additional compensation outside the plan according to the following guidelines:

- A $500 flat monthly bonus will be paid until the assigned territory has been set up within the sales operations system. The flat monthly bonus will be discontinued upon eligibility for bonuses based on unit sales under the bonus plan. Any remaining portion of the flat monthly bonus payment will be pro-rated based on the number of days the AE worked during the month before becoming eligible for bonus compensation under the plan.  An AE will not receive the flat payment concurrent with bonuses for unit sales under the plan.
  - For example, if a new AE starts on October 16th and becomes eligible to earn bonuses under the plan on December 1st when the territory is set up in the system, the new AE will receive the following:
    - For time period of October 16th through October 31st, the new AE will be paid $250 ($500 pro-rated for half a month)
    - For the time period of November 1st through November 30th, the new AE will be paid $500
    - Beginning December 1st, the new AE will be eligible to earn bonuses under the plan based on unit sales in lieu of the flat monthly bonus.

For the subsequent months, the new AE will receive bonus payments based on units sold in the assigned territory in accordance with the plan.  This applies to bonuses based on units by accounts existing prior to the AE's assignment to the territory as well as accounts acquired by the AE. This will apply to any new AE hired into a vacant territory as well as newly realigned territory.

<u>Additional Compensation for Account Executive Covering an Open Territory</u>

If an AE is needed to cover an open territory that does not currently have an AE assigned to it, that AE will be paid a stipend on a monthly basis until that territory has permanent coverage.

This addendum is valid from January 1, 2018 through December 31, 2018.

By my signature below, I acknowledge that I have received a copy of the Account Executive Bonus Plan and the related addendum.  I have reviewed *The ServiceMaster We Listen Dispute Resolution Plan*, and agree to use *We Listen* to resolve any and all covered disputes, including disputes relating to my wages.

Manager: _____       Date: _____
     (signature)

     (print name)

Associate: _____       Date: __1/9/2018__
     (signature)

     (print name)

     (employee ID)

   

## Bonus Plan (con'd)
## Account Executive, Telesales Account Manager and Account Executive I
### Applicable Job Codes:  100696D, 100741, 101671D

**Dispute Resolution:**
Participation in this Incentive Plan is contingent on your agreement to utilize the Company's alternative dispute resolution program, known as The ServiceMaster We Listen Dispute Resolution Plan, to resolve any and all work-related disputes and concerns, including disputes relating to your wages.  The current version of We Listen can be obtained from your manager or HR representative and is available online at: http://www.eyeonservicemaster.com/company-resources/ethics-and-business-conduct/we-listen/

**DO NOT SIGN THIS DOCUMENT UNLESS YOU HAVE REVIEWED THE WE LISTEN PLAN.**

By my signature below, I acknowledge that I have received a copy of this Bonus Plan, have reviewed *The ServiceMaster We Listen Dispute Resolution Plan*, and agree to use *We Listen* to resolve any and all work-related disputes, including disputes relating to my compensation.

Manager: _____     Date: _____
(signature)

Associate: _____     Date: __1_/_9_/_21_8__
(signature)

_____     _8_0_1_2_2_2__OS_  8|0|22 11
(print name)     (employee ID)

*Instructions to manager:*
* *Only associates assigned to the job codes listed above are eligible for compensation under this Plan.*
* *Provide the associate with a copy of this Bonus Plan along with the plan addendum based on the associate's job. Obtain the associate's counter-signature on both documents acknowledging his/her receipt.*
* *Provide the associate with fully-executed copies of the Bonus Plan and Rate of Pay Notice.  Then place the originals of both documents in the associate's personnel file.*
* *For non-exempt associates, associates' regular hourly rate must be no less than the applicable minimum wage.  Some municipalities may have a higher minimum wage than the state minimum.  Consult your HR representative as appropriate.*
* *Confirm that the associate has previously reviewed the current We Listen plan or allow the associate to review We Listen before signing this Bonus Plan.*

**From:** David Specter <dspecter@chwpro.com>
**Date:** February 21, 2019 at 1:33:10 PM CST
**To:** "toddmatoushek@realtyexecutives.com" <toddmatoushek@realtyexecutives.com>
**Subject: Choice Home Warranty- Schedule Meeting**

Hello,

I am with Choice Home Warranty and would love a chance to sit down with you and discuss a potential partnership.

I want to go over…. what makes our policy THE BEST in the industry, the PERSONAL service I provide, and compensation for you and your office.

I work with Peggy, Kim, and several other agents in your office. They will vouch for the level of commitment and service I provide.

All I ask for is a 5-10 minute opportunity to speak with you! Please let me know what day/time would work for you next week or the following!

Thanks you.

***I will be there for you and your clients before, during, and after escrow!***

Senior Account Executive- Choice Home Warranty
David Specter
314-707-3441
dspecter@chwpro.com

To order a warranty please go to www.chwpro.com or call 888-275-2980 prompt 1
To file a claim or follow up on a claim please call 888-275-2980 prompt 2 or go online to chwpro.com



2



Get a Free Quote

HOMEOWNERS     BUYERS & SELLERS     REAL ESTATE PROS     CONTRACTORS     FAQ     BLOG     CONTACT

LOGIN

# Why Purchase a Home Warranty?

Home  >  Why Purchase a Home Warranty?

Home warranties are a popular way for home owners to protect themselves against the high cost of unexpected repairs or replacement of home appliances and systems.* They are available to all home owners as an affordable way to get peace of mind for your home and excellent service from trusted local technicians. With a home warranty, covered items are repaired or replaced for just the cost of the annual service contract fee plus an affordable $60 call fee. Trusted, professionally licensed and insured technicians are dispatched to your home immediately after you file a claim to solve your problems and get your home back on track.

## Who Benefits from a Home Warranty?

Home warranties with Choice Home Warranty are available to all home owners. First time home buyers, sellers, and existing home owners are encouraged to invest in the protection offered by Choice Home Warranty. Even home owners with older homes or aged appliances and systems can benefit from Choice Home Warranty's service contract coverage. Choice Home Warranty provides home warranty service contracts for single family homes, multiple units, condos, and mobile and manufactured homes. The Ultimate Tool for Home Value Protection A home warranty protects your home's value, ensuring that any time a covered appliance or system breaks down, you'll have no trouble taking care of it right away. That means your home, your most valuable asset, will have quality repair or replacement from Choice Home Warranty to maintain its value.

## Home Warranty Facts

- The average life expectancy of nine critical appliances/home systems is 13 years, and the likelihood of failure of one of these systems in a given year is 68 percent. *Home Repair and Remodel, Marshall & Swift L.P.*



https://www.choicehomewarranty.com/homeowners/why-home-warranty/

- Homes on the market with a home warranty included sell on average 50 percent faster than homes without. *National Home Warranty Association*
- Homes with home warranties return a sales price that averages 3 percent higher. *Business Week Magazine*
- 8 out of 10 buyers prefer to buy a home with a home warranty. *Gallup Poll*
- 9 out of 10 California homes sold had home warranty coverage. *Home Warranty Association of California*
- Nationwide, home warranty use is rising with housing trends. *Washington Times*

## How a Home Warranty Saves You Money

While it's possible to go an entire year without any home repairs and not use your warranty at all, it's not likely. And even if that's the case, your investment in peace of mind may still be well worth the cost of the annual service contract. But given the likelihood of needing repairs in any particular year, most home owners find that having a home warranty will save them money year after year. Consider these facts:

- Homeowners spend an average of $900 each year to repair home systems and appliances. *Consumer Expenditure Survey, U.S. Census*
- A home system or appliance repair can range from $65 to $2,000 and replacement averages $1,085. *Home Repair and Remodel, Marshall & Swift L.P.*
- It costs $3,000 annually to maintain a $300,000 home  *MSN Real Estate*

A home warranty with Choice Home Warranty can range from $250 to $450. Compare that to what you could pay to fix commonly repaired and replaced items in your home in any given year:

- Drain line breakage average repair cost: $769
- Water heater average repair cost: $571
- Air conditioning unit average repair cost: $483

## How a Home Warranty Saves Your Time and Frustration

In addition to saving your money, a home warranty is convenient. Choice Home Warranty's network of local technicians are professional, screened, and trusted. They're also licensed and insured, so you can feel comfortable knowing you'll have experts repairing your home. Many home owners find that home repairs with technicians in our network are far easier than finding and choosing their own contractors. With Choice Home Warranty's technicians, you never have to wonder if you made the right choice.

## Choosing a Home Warranty

Purchasing a home warranty is a smart move for every home owner, as it offers an affordable way to protect against surprise home repairs and the expenses that come with them. A home warranty allows home owners to rest easy knowing their home is taken care of.*

* Click Here to view complete limits of liability and any exclusions. CHW offers service contracts which are not warranties. ** See policy for specifics on response times. ***CHW reserves the right to offer cash back in lieu of repair or replacement in the amount of CHW's actual cost (which at times may be less than retail) to repair or replace any covered system, component or appliance.

GET A FREE QUOTE



with purchase of any single payment home warranty plan











Need Help?

› 888-531-5403
› Email Us
› User Agreement
› Get a FREE Quote
› Purchase Now

Why wait?
Sign up today and get your first month FREE˙ !

GET A FREE QUOTE



- About Us
- Maintenance Tips
- Request Service
- Affiliate Program
- Service Areas
- Privacy Policy

- FAQ
- What's Covered
- Customer Login
- Careers
- User Agreement
- Contact Us

- Air Conditioner Insurance vs. a Home Warranty: What's the Right Choice?
- What Is a Home Protection Warranty and What Does it Cover?
- The Best Home Warranty Companies and How to Choose a Plan
- Home Appliance Insurance vs. a Home Warranty: What's the Best Way to Protect Your Home?

## Follow Us





© 2018 Choice Home Warranty. All rights reserved. Choice Home Warranties are not available in California. *With purchase of single payment plan.

https://www.choicehomewarranty.com/homeowners/why-home-warranty/

**From:** Courtney, Thomas [mailto:Thomas.Courtney@ahs.com]
**Sent:** Thursday, March 14, 2019 3:19 PM
**To:** specterdavid@yahoo.com
**Cc:** Brian Tretter <btretter@choicehomewarranty.com>; Russell W. Jackson <rjackson@fordharrison.com>
**Subject:** RE: Employee Confidentiality/Non-Competition Agreement

David,

As I indicated in my e-mail below, if I did not hear back from you, American Home Shield would take steps to protect its interests.

We will be filing a Verified Complaint for Injunctive Relief and Damages which requests, among other things, a Temporary Restraining Order.  We intend to file the Complaint tomorrow, Friday, March 15 at 10:00 a.m. in the Chancery Court of Shelby County, Tennessee.

Please feel free to contact me or Russel Jackson, our outside counsel, at the email addresses above or by calling Russell at 901-291-1534, if you have any questions.

Tom

T. E. Courtney
V.P. and Deputy General Counsel
front door, inc.
150 Peabody Place
Memphis, Tennessee  38103
901-701-5012 (office)
901-229-8358 (cell)

1



**From:** Courtney, Thomas
**Sent:** Monday, March 11, 2019 10:10 AM
**To:** 'specterdavid@yahoo.com' <specterdavid@yahoo.com>
**Cc:** 'Brian Tretter' <btretter@choicehomewarranty.com>
**Subject:** FW: Employee Confidentiality/Non-Competition Agreement
**Importance:** High

David,

I have heard nothing back from you regarding my email below.  It is our understanding that you are working for Choice Home Warranty in violation of your American Home Shield confidentiality/non-competition agreement.  You need to immediately cease and desist your behavior in violation of the agreement and inform me by noon central time on Tuesday, March 12, 2019, that you have done so.  If you do not comply, we intend to take steps necessary to protect our interests.

I look forward to hearing from you.

Tom

T. E. Courtney
V.P. and Deputy General Counsel
front door, inc.
150 Peabody Place
Memphis, Tennessee  38103
901-701-5012 (office)
901-229-8358 (cell)


**From:** Courtney, Thomas
**Sent:** Tuesday, February 5, 2019 6:58 PM
**To:** 'specterdavid@yahoo.com' <specterdavid@yahoo.com>
**Cc:** Morrisse, Kate <Kate.Morrisse@AHS.com>
**Subject:** Employee Confidentiality/Non-Competition Agreement
**Importance:** High

David,

As we discussed, attached is the confidentiality/non-competition agreement you signed while working with AHS.  Please read it carefully, as it contains a number of applicable provisions, including:

- Confidentiality and nondisclosure requirements
- Non-solicitation restrictions regarding clients, employees, and contractors
- Non-competition restrictions
- Non-interference restrictions
- A variety of other duties, responsibilities, and restrictions

I won't elaborate on the details of the agreement at this point, because I'm sure you will want to read and assess them yourself, but I will follow up with correspondence about it in the near future.  **I urge you to evaluate the document carefully, and adhere to its requirements.**

Please feel free to call me at 901-229-8358 with any questions, or you can reach me by email as well.

2

Sincerely,

Tom

T. E. Courtney
V.P. and Deputy General Counsel
front door, inc.
150 Peabody Place
Memphis, Tennessee  38103
901-701-5012 (office)
901-229-8358 (cell)





EXHIBIT

**F**























**Tracy Whitworth** Here's your valentine- the one I emailed today bounced 😂

Like   Reply · 1d                                                          👍 1

> **David Specter** Tracy Whitworth my new email is dspecter@chwpro.com
>
> Like   Reply · 1d

> **David Specter** Tracy Whitworth thanks for the valentine!!! 😊 just sent u email!!!
>
> Like   Reply · 1d                                                    👍 1

Write a reply...                                    😊  📷  GIF  😀



Write a comment                                     😊  📷  GIF  😀

---

**David Specter**

February 4 at 8:51 PM · 👥

Brochures will be emailed via pdf Thursday/Friday to all- if I have worked with you in past couple years (once I get my laptop up), and I will be hitting offices making sure everyone has brochures and business cards!!!! Starting the end of this week moving forward!!!! Thank you all for your support. It means the world!!! 😊

😊 😊 😊

👍❤️ 60                                              16 Comments



**EXHIBIT**

**G**

ALL-STATE LEGAL®



# David Specter


Add Friend


Message


More

84 mutual friends including **Teresa Hedlund** and **Abraham Wolfe**

Works at **Choice Home Warranty**

Lives in **St. Louis**

From **St. Louis**

Married

Joined November 2014

    



EXHIBIT

H

ALL-STATE LEGAL®



👍 1

## Posts



**David Specter**
Yesterday at 9:37 PM · 🕐 · 🌐    •••



## Started New Job at Choice Home Warranty
Yesterday

👍 1

Write a comment...

**David Specter** updated his cover photo.    •••
June 27, 2017 · 🌐







**David Specter**
February 8 at 2 39 PM

Waiting on my company computer... pdf of Choice Home Warranty brochures will be going out next week (as soon as I receive computer)! Thank you!

Have a great weekend everyone!

31                                                          8 Comments

Like                        Comment

**Tryna McBroom Gierer** Ummm so I missed all this until someone told me you changed companies today!!
Like   Reply   1d                                            1

**Tryna McBroom Gierer** And ur cell is going to Rick tremble??
Like   Reply   1d                                            1

**David Specter** Tryna McBroom Gierer 😊 enjoyed speaking with you! Sorry you got rick!! Haha. Look forward to continuing working with you!!! 😊
Like   Reply   1d                                            1

**Tryna McBroom Gierer** David Specter ditto 😊
Like   Reply   1d

Write a reply

**Tracy Whitworth**

Like   Reply   1d

**Tracy Whitworth** Here's your valentine- the one I emailed today bounced 😞
Like   Reply   1d                                            1



EXHIBIT
I



**Lynda Steiner** Yes yes!! Thank you!!

Like   Reply   1w   👍 1

**Cathy Cline** Yes! Need your contact information. Best wishes!! Will miss seeing you at the office & at corporate events!

Like   Reply   1w   👍 1

**David Specter** Cathy Cline going to miss seeing you at the office and out/about!! However we can still work together!! Sending u my info 😃

Like · Reply  1w

**David Specter** Cathy Cline pm u! 😃

Like   Reply  1w

Write a reply   ☺ ⃝ GIF 🎭

**Maureen Martin** David, I have been out of town and a bit out of the loop, but by the sounds of a few emails floating around, it seems you may be leaving AHS. There are going to be lots of disappointed agents, I being one of them. You have been a delight to work with and there will be no replacing you. You have become a friend. I wish you nothing but good things in life and all my best to you and your darling family.

Like   Reply   4d   👍 1

**David Specter** Maureen Martin I will give u a ring tomorrow! I did leave AHS, but I am staying in the home warranty business. I work at Choice Home Warranty now! I'm hoping we can continue to work together. Choice has an amazing policy, coverage, and vendor network/ ... See More

Like   Reply   4d

**Ronda Baumann** David Spector ditto what Maureen said!

Like   Reply · 4d   👍 1



David Specter Ronda Baumann thanks so much Ronda!!! I'll call u tomorrow as well 😊

If you liked the warranty before, it's amazing with Choice warranty!! would love to keep working with you!

Like  Reply  4d                                    ❤ 1

David Specter Thanks Ronda!! What's ur email? I'll send u pdf as soon as I get my computer up!!! Want to make sure I have an accurate one for you!

Thanks again for your support!! It's means a lot 😊
... See More

Like  Reply  4d

David Specter Ronda Baumann

Like  Reply  4d

Ronda Baumann David Specter I sent you a pm

Like  Reply  4d

David Specter Ronda Baumann thanks again 😊 😊
Like  Reply  4d                                    👍 1

Write a reply...                              😊  📷  GIF  🎴

Tammy Meyer I will keep my eyes open for email. Take care.
Like  Reply  4d                                    👍 1

David Specter Tammy Meyer thank you!! 😊
Like  Reply  4d

Write a reply...                              😊  📷  GIF  🎴

Patty Main Me too! I'm done with AHS.
Like  Reply  1d                    👍 1

David Specter Patty Main thanks you for your support!! Love working with, and excited to keep working with you!! 😊 😊 😊 !

As you know, I always will have you and your clients back!!! 😊
#service #cares

Like · Reply  1d



View 1 more comment

**Lea Fray Khreish** Welcome! 😊
Like   Reply   4d

    **David Specter** Lea Fray Khreish thank you!!!
    Like   Reply   4d

    Write a reply...

**C Sean Ciaramitaro** So what happen to HSA they need you !!!!
Like   Reply   4d

    **David Specter** C Sean Ciaramitaro haha I'll PM you!
    Like   Reply   3d

    Write a reply...

**Ronda Windal** Good luck. Be happy!!!!!!!
Like   Reply   3d

**Victor Ponce** David?? Good luck!
Like   Reply   2d

    **David Specter** Victor Ponce thanks Victor!! I'll PM you!!
    Like   Reply   2d

.ıl AT&T  LTE                    1:12 PM



**Holli Mendica** added a new photo — with **David Specter** and **3 others** at **River City Casino & Hotel**.

February 21 at 8:30 AM · 🌐



👍 Like          💬 Comment          ↗ Share

👍 5



EXHIBIT

**J**